A. P. MOREY, Trustee, Respondent, v. JOHN R. CLOPTON, Appellant.

Kansas City Court of Appeals, December 7, 1903.

1. **APPELLATE AND TRIAL PRACTICE: Instructions: Affirming Judgment.** When the trial is before the court, without declarations of law, the judgment will be affirmed if justified by the evidence on any theory.

2. **EVIDENCE: Meeting of Vendees: Minutes: Parol.** Where the vendees of some five hundred lots meet to divide the lots under the terms of the common contract, their proceedings are not required to be reduced to record, and parol evidence of what transpired is admissible whether minutes were kept or not.

3. ——: ——: ——: ——. And where the minutes have been lost, such loss justifies the admission of parol evidence to show their contents.

4. ——: **Sufficiency of.** The evidence in this record sufficiently shows that a majority of the vendees met and appraised and divided the lots, as contemplated by the contract.

5. **CONTRACTS: Construction: Vendee's Division of Lots.** Under a certain contract, some five hundred lots were sold in pairs each to be of the average value of two hundred dollars, the vendees signing separate contracts containing the common provision that the majority of the vendees should divide and assign the lots among subscribers in such manner as they should decide. *Held*, these several contracts must be considered as one contract, and the majority of the vendees was the agent of each vendee, to assign said lots, and could reduce or increase the area of said lots to keep them to the average value, and could auction off the selection to the highest bidder, the proceeds of such auction being applied to the opening of streets and like matters for the common benefit.

6. ———: ———: ———: **Notice.** The fact that a vendee did not attend or receive notice of the meeting of the majority can not affect the result, since the contract made no such requirement and his rights could not suffer since, under the scheme adopted, each lot was made of equal value with every other lot, and the fact that any one's right of selection is narrowed down to two parcels is no matter of complaint since some one of the vendees must take such parcel.

Appeal from Pettis Circuit Court.—*Hon. George F. Longan*, Judge.

AFFIRMED.

*Barnett & Barnett* and *John Cashman* for appellant.

(1) The court erred in finding for plaintiff. The scheme adopted of disposing of the lots by auction, or rather of selling the right to a preference at auction, to the highest bidder, thus requiring the subscriber to pay a bonus for his lot in addition to the price agreed upon in his contract, did not constitute a method of assigning the lots under the contract, but was an entire change of the contract. It was a modification of the original contract, or the substitution of a new one for the original, and imposed an additional burden upon the subscriber. The defendant never consented to this modification, and hence is not bound thereby. A party can not be bound by a modification of a contract to which he does not yield an intelligent assent. Knapp v. Laughlin, 9 Mo. App. 584; Implement Co. v. Iron Works, 129 Mo. 222, l. c. 229; Jacobs v. Maloney, 64 Mo. App. 270; Sutton v. Rodes, 149 Mo. 297; Moomaw v. Emmerson, 80 Mo. App. 318; Runkle v. Johnson, 30 Ill. 328. (2) The plaintiff tendered defendant something different from what he contracted for. The contract entitled him to a lot to be impartially assigned him out of 500 lots for the price of $200. He was tendered the privilege

of choosing a lot for $201 out of one-fourth of 500 lots, being the inferior lots left after the choice ones had been taken by parties who had bought the privilege of choosing first. There can be no recovery when plaintiff tenders something different from what is contracted for. Sheweld v. Bolmer, 1 Mo. App. 176; Halpin v. Manny, 33 Mo. App. 388; Lumber Co. v. Snyder, 65 Mo. App. 568. (3) There is no evidence in the record that a majority of the subscribers for lots adopted the scheme in question, of selling the lots at auction. (4) The court erred in permitting plaintiff over defendant's objection to prove the proceedings of the meeting, at which scheme in question was adopted, by parol evidence, for the reason that a record of such meeting was kept and it was the best evidence.

*Montgomery & Montgomery, Chas. E. Yeater,* and *Geo. P. B. Jackson* for respondent.

(1) The plan of assigning the lots by dividing the same into parcels of equal value and auctioning the choice was fair and impartial, and was within the scope and power of a majority of the lot-subscribers, who were made collectively the agent of each, and who were granted the broadest possible powers under the subscription contracts, and the plan executed was the only method which could have been devised in order to provide the expense necessary for platting, surveying, designating and assigning the lots, inasmuch as the entire proceeds of the sale of the lots, $100,000, was pledged to the railway company by the written contract of April 13, 1897, which was authorized by each lot subscription contract and was a part thereof. (2) The single and only possible alternative plan, on which the lots could have been assigned, was by a drawing or lottery, but this alternative plan was impossible as it could not provide the expense of platting, surveying, designating and assigning the lots. (3) The evidence

that a majority of the subscribers for lots adopted the scheme in question of selling the lots at auction is overwhelming and the defendant introduced no countervailing testimony. (4) The meeting constituted no organized society, nor was its secretary instructed to make any minutes, nor were such minutes afterwards approved, and an actual record kept by its secretary would not be legal evidence, and the facts were open to the ordinary proof. Childress v. Cutter, 16 Mo. 24; Morrissey v. Wiggins Ferry Co., 47 Mo. 521; McQuade v. St. Louis, 78 Mo. 46; Casey v. Petroleum Co., 33 Cal. 694; Comrs. v. Gillum, 92 Ind. 511; Phillips v. Burns, 21 Miss. 31; Pierce v. Richardson, 37 N. H. 306; Smith v. Helmer, 7 Barb. 416; Peak v. Salt Lake City, 11 Utah 331. (5) The contracts with all the purchasers of lots in the land in question, are to be considered together as one contract for the purposes of those who acquired interests in the land and when so construed the result is that Clopton as well as the other purchasers made a majority of the subscribers the agent of all to decide on a plan and effect a distribution or partition of the land among the purchasers. McDonald v. Wolf, 40 Mo. App. 309; Houck v. Frisby, 66 Mo. App. 16; Jennings v. Todd, 118 Mo. 296-304; Water Co. v. Aurora, 129 Mo. 540; Y. M. C. A. v. Dubach, 82 Mo. 475.

SMITH, P. J.—A correct understanding of the nature of this case and the questions raised by the appeal therein may be best had by a reference to the pleadings, which are as follows:

"Plaintiff states that in the year 1897, he, together with his associates, Ira Hinsdale, W. P. Haley and the Porter Real Estate Company were the owners of a large tract of land in and adjacent to the southwestern part of the city of Sedalia. That during the said year the plaintiff and his associates and this defendant, with other citizens of the city of Sedalia, were desirous of

inaugurating a public enterprise which would increase the general business and population of the said city of Sedalia, and otherwise benefit the same and the respective citizens and property owners thereof, and for that purpose and to that end, a movement was set on foot to secure the location in said city of the car shops of the Missouri, Kansas & Texas Railway Company, and, after various preliminary negotiations, it was proposed and agreed that the plaintiff and his said associates should donate a portion of the above mentioned tract of land owned by them to the said railway company as a site for the location of the coach and car shops of the said railroad company, and also donate one hundred thousand dollars to secure the erection, location and maintenance of said shops, and, to provide a means of raising the said sum of money for the above purpose, the plaintiff and his associates also proposed to donate another portion of said tract of land to be divided into lots to be sold to the property owners and other citizens of the city of Sedalia, the proceeds of such sales to be used for the purpose of securing the location and construction of said shops.

"Plaintiff further states that, after it became practically assured that such plan would succeed, he and his associates set apart for the purpose of being divided into lots and sold as aforesaid a portion of said land described as follows: The east 50 acres of the south half of the southwest quarter of section 4, and the east 50 acres of the north half of the northwest quarter of section 9, all in township 45, of range 21, in Pettis county, Missouri. Thereupon, the Sedalia Board of Trade, an association of business men and other citizens of the city of Sedalia, undertook to secure contracts for the purchase of lots by different persons in Sedalia in order to raise the said sum of one hundred thousand dollars, upon the proposal and understanding that the portion of said land set apart for said purpose would be divided into five hundred lots of an average value of

two hundred dollars each, and the said Sedalia Board of Trade did secure contracts between various parties and this plaintiff for the sale of said lots. That, among others, this defendant did on the twenty-eighth day of January, 1897, enter into a contract with this plaintiff for the purchase of two lots at the average price of $200 each, agreeing to pay therefor the total sum of $400, which said contract is in words and figures as follows: . . . 'The party of the first part agrees to purchase of said A. P. Morey, trustee, lots to the amount of $400, at an average price of $200 per lot, in an addition to be platted in the city of Sedalia, located on land bounded on the east by Grand avenue, on the north by Twelfth street, if extended west from Grand avenue, and extending west to Sneed avenue, or such a distance as is necessary to plat 500 lots; said lots to be about 45x120 feet, with streets and alleys; said lots to be appraised at prices so that the average price of the lots platted on said land shall be $200 per lot; and they shall be assigned among and between the subscribers thereto in such manner as the majority of said subscribers shall decide. This contract is made on condition that said A. P. Morey, trustee, and his associates, shall make an arrangement with the officers of the M., K. & T. Railway company to locate their coach and car shops on land adjoining this land on the south or southwest, and extending along the M., K. & T. railway right of way. If it be found by the said A. P. Morey, trustee, and his associates, that they can make a satisfactory contract with the said railway company, then upon notice of that fact, and upon demand, the party of the first part agrees to pay 25 per cent of the purchase price of said lot or lots into Third National bank in the city of Sedalia, to be held in trust by said bank until the same shall be needed to carry out said contract with the railway company by said A. P. Morey, trustee, and his associates, at which time the said bank shall pay the same to A. P. Morey, trustee, and his associates; and when said con-

tract is formally entered into between said A. P. Morey, trustee, and his associates, and said railway company, a further payment of 25 per cent of the purchase price shall be due and payable to the said A. P. Morey, trustee, and his associates. Upon the payment of this second 25 per cent said A. P. Morey, trustee, shall execute a warranty deed to the party of the first part for lots purchased by him, and the remaining one-half of the purchase money shall be secured by deed of trust upon the property conveyed, payable one-half in six months, and the balance on or before one year from date of deed, with interest at the rate of six per cent per annum. Said A. P. Morey, trustee, and his associates, agree to use the proceeds received from this sale of said lots for the purpose above mentioned; and in case said contract is not entered into by said A. P. Morey, trustee, and his associates, with the said railway company, within 90 days from this date this contract shall be null and void.

" 'John R. Clopton,

" 'A. P. Morey, Trustee.'

"Plaintiff further states that the land set apart for said 500 lots was duly platted as an addition to the city of Sedalia known as 'West View' and bounded as described in said contract. Plaintiff further states that, in accordance with the condition of said contract, he, as trustee for the joint interest of himself and his associates, as aforesaid, together with the said Sedalia Board of Trade, did on the thirteenth day of April, 1897, enter into a contract with the Missouri, Kansas & Texas Railway company for the permanent location and maintenance of said coach and car shops of said railway company on the tract of land adjoining the said addition on the south or southwest thereof and extending along the Missouri, Kansas & Texas railway right of way, and said land upon which said shops were to be erected was conveyed by this plaintiff to said railway company for that purpose. Plaintiff further states that when it was ascertained that a satisfactory contract for the purpose

aforesaid could be made with the railway company, 25 per cent, or $100 of the amount which the defendant by said contract agreed to pay became due, and the same was paid by the defendant. And thereafter when the said contract was entered into between the plaintiff and said railway company another 25 per cent, or $100 of the amount which the defendant by said contract agreed to pay became due and the same remains unpaid by the defendant. Plaintiff further states that thereupon, in accordance with the terms of the contract between the Board of Trade and plaintiff, and the said railway company on the other part, the latter commenced the erection of the shops on the land conveyed to it for that purpose, and continued in the work of erecting said shops as provided in said contract, and has now completed the same.

"Plaintiff further states that it was provided and stipulated in the contract between plaintiff and defendant, as it was in the contracts between the plaintiff and other purchasers of lots in said addition, that the lots should be assigned among the subscribers thereto, being the parties entering into said contracts, in such manner as the majority of said subscribers should decide. And thereafter the parties who entered into contracts for the purchase of the said 500 lots, designated in said several contracts as subscribers to said lots, held one or more meetings for the purpose of considering and determining upon some plan for the assignment of said lots among the various purchasers thereof, and a plan was agreed upon among and by a majority of said subscribers. That in pursuance of said plan so agreed upon a large number of said lots have been assigned to the various purchasers thereof, and most of the purchasers of said lots have fully paid the price and sum which they agreed to pay therefor, but plaintiff says that this defendant has neglected and refused to make any selection of the two lots which he contracted to buy, and has refused and neglected to pay the balance, to-wit: three

hundred dollars of the purchase price so promised to be paid by his contract aforesaid. Plaintiff says that by the terms of the contract between the plaintiff and defendant, plaintiff agreed to execute a warranty deed to the defendant for the lots purchased by him upon payment of the second 25 per cent of the purchase money as aforesaid, and the defendant agreed to pay the balance of the purchase money as follows: that is, one-half thereof, or one hundred dollars, in six months from the date that said deed should be executed, or the date of the maturity of the said second 25 per cent and the other half of said balance, to-wit: $100 in one year from said date, said deferred payments to be secured by a deed of trust upon the lots purchased by defendant. Plaintiff states that he was ready and willing to execute and deliver to defendant a warranty deed for the said lots upon payment of the said second 25 per cent as aforesaid, and so offered to do, and called upon and requested the defendant to make selection of his two lots in accordance with the plan agreed upon by the subscribers or purchasers of lots, but although requested, the defendant has failed and refused to make any selection or to pay the balance of the purchase money as aforesaid, although plaintiff has at all times been ready to deliver a proper deed to the defendant for said lots as provided in said contract.

"Wherefore, plaintiff says that the defendant now owes on account of the purchase of said two lots by virtue of the terms of the aforesaid contract between plaintiff and defendant the sum of three hundred dollars, with six per cent interest thereon from April 13, 1897.

Plaintiff further states that certain others of the purchasers of, or subscribers for lots in said addition, have failed to make selections of the lots which they contracted to buy, and that, together, with the said lots contracted for by the defendant there remained unassigned in the said addition the following lots (describing them). In and to which the defendant is entitled to an interest

equal to —— of said lots of the average value of two hundred dollars each, which interest remains undivided and unsegregated from the rest of said unassigned lots, because of the refusal of the defendant to make his selection.

"Wherefore, plaintiff says that he is entitled to a lien upon an undivided interest in the aforesaid unassigned lots equal to two lots of the average value of two hundred dollars each, as aforesaid, and upon the defendant's right to select two of the said unassigned lots, as security for the balance of the purchase money and interest as aforesaid remaining unpaid. Plaintiff therefore prays that he have and recover judgment against the defendant for the said sum of three hundred dollars, with interest at six per cent per annum thereon from April 13, 1897, and that the said sum of principal and interest, together with the costs of this suit, be declared a lien upon the defendant's interest as aforesaid in, and the right to select two of said unassigned lots in said West View addition to the city of Sedalia, and that special execution issue for the sale of said interest and right in said addition to satisfy said judgment and costs, and that for the balance of said judgment, if any, the plaintiff have general execution against the defendant, and plaintiff prays for all other proper relief."

The answer to the plaintiff's petition admits that defendant signed the contract sued on, but denies each and every other allegation in said petition contained.

Further answering, the defendant says that it is not true that he was ever offered an opportunity to take one of the average lots in said addition at the sum of $200 or was ever offered or afforded an opportunity of taking two lots as agreed at the sum of $400 as alleged in plaintiff's petition; and denies that any fair, reasonable or valid plan for the allotment of said pieces of ground among the various subscribers was ever adopted or that any legal, valid or binding method was adopted; and

denies that any method of the allotment of said lots or pieces of land among the various subscribers was ever adopted by a majority of such subscribers, etc.

There was a trial before the court. As no declarations of law were requested or given we can not know upon what theory the case was considered and disposed of. It results that if the judgment, which was for plaintiff, was justified by the evidence on any theory it must stand.

The defendant contends that the court erred in its action allowing the plaintiff to prove by parol evidence what took place at the several meetings of the vendees. The majority executing the powers conferred upon them as a body by the contract was not a board of directors of a business or other corporation nor was it an official body required by law to keep a record of its proceedings. It was but a temporary association acting together for the purpose specified in the contract and when that purpose was accomplished it became *functus officio*. One of the principal things which was enjoined upon it by the contract was to divide the 500 lots which the vendees had jointly purchased. The division was to be effected in such manner as the majority of the vendees should decide. Whether or not that majority did meet and adopt a plan or scheme was a question of fact like any other fact to be proved by the best evidence the nature of the case would admit. Its action was certainly not to be proved by a record only when it was not required to keep one.

It seems that the secretary of the meeting on his own motion and for his own use kept some sort of a memorandum of the proceedings of the meeting, but that had been lost or mislaid and so could not be produced at the trial. If it had been, as it was not, the only primary evidence in the case, its loss was sufficient to justify the admission of parol evidence of its contents. But we are unable to discover any reason why the acts and proceedings of the meeting could not be proved by parol evi-

dence, without reference to whether the secretary kept any memorandum of the proceedings of the meeting or not.

The further contention is made by the defendant that there is no evidence to be found in the record tending to prove that a majority of the vendees ever met, appraised and divided the 500 lots comprised within said "West View" addition, so that the average value of the lots as parceled was $200 as contemplated by the contract can not be upheld. The uncontradicted evidence proves that there were several meetings of the vendees and that at such meetings it was ascertained that a majority of said vendees was not only present but voted for each proposition that was declared passed and adopted.

The defendant with much earnestness further insists that the scheme, even if adopted, for the assignment of the lots, in so far as it provided for selling the right of preference at auction to the highest bidder was not within the authority conferred by the contract. It must be of course conceded that if the majority exceeded the limitations of the authority vested in it by the contract the defendant, who was not present at the meeting and did not by his vote consent to the adoption of the scheme, was in no way bound by the action of such majority. Whether or not the defendant is bound by the action of the majority is a question which for its solution is dependent upon the construction that shall be given to that provision of the contract which is to the effect that the lots should be about 45x120 feet with streets and alleys, and be appraised at prices so that the average price should be $200 per lot, and that they—the lots—"should be assigned among and between the subscribers—vendees—thereto in such manner as the majority of them should decide." The several vendees entered into separate contracts with the trustee vendor, but each contract was, except as to amount of the subscription, exactly like

the others. As these several contracts related to the same subject-matter and were entered into as a general whole to accomplish the single purpose therein clearly expressed, they must be considered as one contract. McDonald v. Wolff, 40 Mo. App. 302; Houck v. Frisbee, 66 Mo. App. 16. All of the vendees entered into a contract with the trustee embracing the provision just referred to. They each and all agreed as between the trustee and themselves and between themselves the said 500 lots should be assigned among them in *such manner as the majority of them should decide.* Under this provision plenary power was granted by defendant to the majority of his associate vendees to assign the lots, in which all had an equitable interest, among them in such manner as that majority should decide. Under the contract it — the majority — was constituted the agent of each one of the vendees subject to the limitations therein prescribed to divide and partition the 500 lots in such manner as such majority should decide, to the end that each might receive the lot or lots to which he was entitled. But there was necessarily a difference in their relative values resulting from location, topography, etc. In order to preserve the average and at the same time establish an equality in value among the lots it became necessary to reduce the area of some and increase that of others. This was effected by the scheme. The lots were parceled out and so appraised that each parcel was made the equal in value of every other one or of the value of two hundred dollars. None of the 500 lots as parceled out were of a less value than $200. No odds which one of the parcels was selected by a vendee, it was equal in value to any other one in the addition. The last parcel which remained unselected was equal in value to the first or any other that had been selected.

After the lots had been parceled and the value of each fixed by the appraisement at two hundred dollars it would of course result that though the parcels were of equal value that for many reasons some of the vendees

would prefer one lot to another, and so the scheme provided that the majority should sell the right of preference at auction, to the vendee offering the greatest amount of premium therefor.   The fund to be raised in that way was to be applied to the opening of streets through the addition, procuring plats, abstracts of title, recording, etc., which was for their common benefit and advantage.

If a vendee did not attend the meetings or did not bid for a preference he still had the right to make a selection from the remaining unselected parcels, any one of which was equal in value to any one of those that had been selected.   He could suffer no substantial detriment as long as a single parcel remained which he could have assigned to him.   There were as many parcels of equal value as had been subscribed for.   There was no inequality nor injustice in the scheme.   And even if defendant's right of selection is narrowed down to two parcels, still he can not complain of this because it inevitably results from the scheme that some one of the vendees must take such parcels; and why not defendant as well as any other?

We have no doubt that the scheme for the division as devised by the majority was within the limitations of the power conferred by the contract to which the defendant was a party and he can not now be heard to question it.   It was conclusive as to him.   The scheme having been devised by the majority, it is as binding on the defendant and others of the minority as on those composing the majority.   And it could make no difference if the defendant was not in the State at the time of the adopttion of the scheme, or was not present at the bidding, or only had at most constructive notice that the meetings would be held, and of this he can not complain, since his agent, the majority, was not required to give him notice of the time it would meet and transact the business which he had intrusted to it as such.   He was as much bound as if present.   His presence was not necessary to

validate the act of his agent in the premises.    There is no pretense that the scheme was a fraudulent concoction of the majority.    The scheme was authorized by the contract and consequently its requirements constituted no modification or departure from such contract.

As we discover no merit in the defense interposed the judgment must be affirmed.    All concur.